IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Lance Lyles, #314408 ) | Civil Action No. 6:15-4229-RMG-KFM |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Warden Cecilia Reynolds, ) | |
| Respondent. ) | |

The petitioner, a state prisoner who is represented by counsel, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND

The petitioner is currently confined at Lee Correctional Institution in the South Carolina Department of Corrections ("SCDC"). He was indicted by a Spartanburg County Grand Jury in March, June, and August 2005 for murder (2005-GS-42-0890), burglary – first degree (2005-GS-42-2627), and attempted armed robbery (2005-GS-42-3712). In February 2006, he was indicted for unlawful possession of a pistol by a person under 21 (2006-GS-42-0879). The petitioner was represented by Richard W. Vieth. On March 17, 2006, after a jury trial, the petitioner was convicted of all charges except the burglary charge. The jury instead found the petitioner guilty of attempted burglary. The Honorable J. Derham Cole sentenced the petitioner to confinement for life for murder, 20 years for

attempted armed robbery, ten years for attempted burglary, and five years for unlawful possession of a pistol by a person under 21, all sentences to run concurrently.

### Underlying Case Facts

The following facts are taken from the opinion of the South Carolina Court of Appeals in the petitioner's direct appeal:

> On December 8, 2004, two men approached the apartment of Clarence Spicer (Spicer) in Spartanburg, South Carolina. At the time, Spicer, known as "See" or "C.", and the victim, Tavaris Howze (Howze), were the only people inside the apartment. Spicer recounted the events:
>
>> [T]wo guys came up to my door, one of them with a mask and a gun and the other with a hood covering his face.
>>
>> I opened the door and saw that. One of the guys tried to step in. I stopped him on his way in. The other guy came from the side with a gun and a mask on, and I started trying to close the door. And while I was closing the door one of them shot inside of my house, and that's when [Howze] was shot.
>
> Spicer called 911 and waited for the authorities. Upon their arrival, police officers discovered Howze's body in the apartment with a gunshot wound to the head. Howze died from his injuries.
>
> At the time of the shooting, Spicer did not recognize either of the men. However, he later recalled the identity of the individual in the hood as Lance Lyles because Lyles had visited Spicer's apartment several weeks beforehand. Spicer relayed Lyles' identity to the police and an arrest warrant was issued. Police officers then approached Lyles and a chase ensued. He was subsequently apprehended and arrested. Spicer was able to identify Lyles as one of the assailants from a photographic lineup and again at trial. Following the arrest, police searched Lyles' residence andd discovered multiple rounds of ammunition in various sizes, several shell casings, and a jacket containing a ski mask.
>
> Several days after Lyles' arrest, Joshua Jeter (Jeter) was arrested as Lyles' accomplice to the crimes. Jeter indicated he

2

and Lyles had been outside of Spicer's apartment on the night of the incident and Jeter was wearing a ski mask. However, Jeter did not admit he was carrying a firearm at the scene until making another statement almost a year after his arrest. In the latter statement, Jeter conceded he carried a pistol to the apartment but claimed it was a different caliber than the weapon that killed Howze.

Both Lyles and Jeter were indicted for several offenses, including murder, burglary in the first degree, armed robbery, and unlawful possession of a pistol by person under the age of twenty-one. At trial, both individuals testified in their own defense. Lyles and Jeter gave conflicting accounts of the incident with each inculpating the other as the shooter. However, each corroborated they had originally gone to the apartment to purchase drugs from Spicer and had no intention of robbing him.

(Doc. 10-3, pp. 2-3). *State v. Lyles*, Op. No. 4406 (S.C. Ct. App. June 6, 2008).

### Direct Appeal

A timely notice of appeal was filed on the petitioner's behalf. In the appeal, the petitioner was represented by retained counsel Tara D. Shurling. In the initial brief of appellant, counsel raised the following issue: "Did the exclusion of proffered testimony constitute an abuse of discretion that deprived the Appellant of his due process right to present witnesses in his own defense?" (doc. 10-1, p. 3). The South Carolina Court of Appeals affirmed the petitioner's conviction and sentence (doc. 10-3). *State v. Lyles*, Op. No. 4406 (S.C. Ct. App. June 6, 2008). The petitioner made a timely petition for rehearing on June 23, 2008. Rehearing was denied August 25, 2008 (doc. 10-4).

The petitioner filed a petition for writ of certiorari to the South Carolina Supreme Court on November 19, 2008. Counsel Shurling raised the following issue:

PETITIONER'S QUESTION PRESENTED

I. Did the Court of Appeals err in upholding the exclusion of proffered testimony that went to the heart of the Petitioner's defense and which deprived the Petitioner of a fair trial?

3

The respondent made a return to the petition on December 19, 2008.  On July 10, 2009, the Supreme Court of South Carolina issued its letter order denying certiorari (doc. 10-5).  On July 16, 2009, the South Carolina Court of Appeals issued the remittitur (doc. 10-6).

***PCR***

On September 16, 2009, the petitioner filed an application for post-conviction relief ("PCR") (app. 737-45).  The respondent made its return on or about April 9, 2010 (app. 746-59).  In his application, the petitioner alleged he was being held in custody unlawfully for the following reasons:

> a. "Trial counsel failed to adequately investigate the case prior to trial,"
> b. "Trial counsel failed to adequately prepare and present witnesses at trial,"
> c. "Trial counsel failed to recognize and present objections to errors which occurred during trial," and
> d. "Trial counsel failed to develop and present viable defenses to the charges against the Applicant prior to and during his trial."

(App. 741).  An evidentiary hearing was held before the Honorable Roger L. Couch on September 15, 2010 (app. 821-923).  The petitioner was present and represented by Tara D. Shurling.  Suzanne H. White, of the South Carolina Attorney General's Office, represented the respondent.  At the petitioner's request, the record was held open for testimony from the petitioner's brother.  On June 16, 2011, the testimony of Leonard Lyles was presented (app. 947-59).

At the hearing, the following issues were raised:

> 1. Failure to Call Applicant's Brother as Witness to Corroborate Evidence of Marijuana Sales from Spicer's Apartment.
> 2. Failure to Use a Photograph of a Gun Found in Spicer's Apartment to Impeach Spicer as to Whether or Not He Was Armed at the Time of the Murder.
> 3. Failure to Object to Irrelevant Evidence of Bullets at Lyles' House, Mother's Past Arrest, and Mother's Actions at Police Station.
> 4. Failure to Request Proper Jury Charges.

4

5. Failure to Consult with Applicant Regarding Amending Indictment.

(App. 987-91). The Honorable Roger L. Couch filed an order of dismissal on November 1, 2011 (app. 984-95).

**PCR Appeal**

On April 5, 2012, the petitioner appealed the PCR ruling. In his petition for a writ of certiorari, the following questions were raised:

I. Did the lower court err in denying the Petitioner Post-Conviction Relief where he met his burden of proof regarding his allegation that his constitutional right to effective assistance of counsel prior to trial, as secured by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution, as well as Article I, Section 14 of the South Carolina Constitution, had been violated in that defense counsel failed to call the Petitioner's brother as a witness to corroborate the Petitioner's testimony that he went to the victim's apartment that night to purchase a small amount of marijuana?

II. Did the lower court err in denying the Petitioner Post-Conviction Relief where he met his burden of proof regarding his allegation that his constitutional right to effective assistance of counsel prior to trial, as secured by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution, as well as Article I, Section 14 of the South Carolina Constitution, had been violated in that defense counsel failed to object to the amendment of the First Degree Burglary charge to an Attempted First Degree Burglary charge during the course of the proceedings?

III. Did the lower court err in denying the Petitioner Post-Conviction Relief where he met his burden of proof regarding his allegation that his constitutional right to effective assistance of counsel prior to trial, as secured by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution, as well as Article I, Section 14 of the South Carolina Constitution, had been violated in that defense counsel failed to request proper jury charges. Specifically, defense counsel was ineffective for:

1. Failing to object to an accomplice liability instruction that erroneously referenced the felony murder doctrine and made it easier for the jury to find the Petitioner guilty of murder; and

5

2. Failing to request a clarifying instruction, that an attempt to purchase 28 grams or less of marijuana, as described by the Petitioner, was not a felony?

IV. Did the lower court err in denying the Petitioner Post-Conviction Relief where he met his burden of proof regarding his allegation that his constitutional right to effective assistance of counsel prior to trial, as secured by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution, as well as Article I, Section 14 of the South Carolina Constitution, had been violated in that defense counsel failed to object to irrelevant evidence suggesting that the Petitioner came from a "bad family." Specifically, defense counsel was ineffective for:

1. Failure to object to irrelevant testimony that impugned the character of the Petitioner's mother; and

2. Failure to object to testimony that varying kinds of ammunition were left lying around the Petitioner's home; and

3. Failure in allowing the Petitioner to testify that his brother had been arrested, on an unrelated offense, earlier that night?

V. Did the lower court err in denying the Petitioner Post-Conviction Relief where he met his burden of proof regarding his allegation that his constitutional right to effective assistance of counsel prior to trial, as secured by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution, as well as Article I, Section 14 of the South Carolina Constitution, had been violated in that defense counsel failed to use a photo of a gun found in the victim's apartment to impeach that victim as to whether or not he was armed at the time of the shooting?

(Doc. 10-7, pp. 2-3). The respondent made a return on August 6, 2012 (doc. 10-8). On September 25, 2014, the South Carolina Court of Appeals denied the petition (doc. 10-10). *Lyles v. State,* Appellate Case No. 2011-204371 (S.C. Ct. App. Sept. 25, 2014). The remittitur was issued on October 13, 2014, and filed on October 17, 2014 (doc. 10-11, 10-12).

# FEDERAL PETITION

In his federal petition, the petitioner, through counsel, makes the following claims:

**Ground One**:   The state court's exclusion of proffered testimony regarding prior drug sale solicitations, and the presence of drugs found next to the victim's body, constituted an abuse of discretion by the trial judge and a violation of Petitioner's rights to due process of law as protected by the Sixth and Fourteenth Amendments to the United States Constitution. The state appellate courts erred in affirming that ruling. (Issue One in Direct Appeal)

**Ground Two**: The state court erred in denying the Petitioner Post-Conviction Relief where he met his burden of proof regarding his allegation that his constitutional right to effective assistance of counsel at trial, as secured by the Sixth and Fourteenth Amendments of the U.S. Constitution, had been violated in that Defense Counsel failed to call the Petitioner's brother as a witness to corroborate Petitioner's testimony that he went to the victim's apartment that night to purchase a small amount of marijuana. The South Carolina Court of Appeals erred in affirming that ruling. (Question One on PCR Certiorari)

**Ground Three**: The state court erred in denying the Petitioner Post-Conviction Relief where he met his burden of proof regarding his allegation that his constitutional right to effective assistance of counsel at trial, as secured by the Sixth and Fourteenth Amendments of the U.S. Constitution, had been violated in that defense counsel failed to object to an improper jury charge on the law of accomplice liability and failed to request a proper jury charge addressing the fact that an attempt to purchase 28 grams or less of marijuana would not constitute a felony in South Carolina. The South Carolina Court of Appeals erred in affirming that ruling. Specifically, Petitioner asserts that defense counsel was ineffective for:

(1) Failing to object to an accomplice liability instruction that erroneously referenced the felony murder rule, which is not recognized in South Carolina, and which diminished the State's burden of proof and made it easier for the jury to find the Petitioner guilty of murder; and

7

(2) Failing to request a clarifying instruction, that an attempt to purchase 28 grams or less of marijuana, as described by the Petitioner, was not a felony. (Question III on PCR Certiorari)

**Ground Four:** The state court erred in denying the Petitioner Post-Conviction Relief where he met his burden of proof regarding his allegation that his constitutional right to effective assistance of counsel prior to trial, as secured by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution was violated in that defense counsel failed to object to irrelevant evidence suggesting that the Petitioner came from a "bad family." Specifically, defense counsel was ineffective for:

1. Failure to object to irrelevant testimony that impugned the character of the Petitioner's mother; and

2. Failure to object to testimony that varying kinds of ammunition were left lying around the Petitioner's home; and

3. Failure in allowing the Petitioner to testify that his brother had been arrested, on an unrelated offense, earlier that night? (Question Four on PCR Certiorari)

**Ground Five**: The state court erred in denying the Petitioner Post-Conviction Relief where he met his burden of proof regarding his allegation that his constitutional right to effective assistance of counsel prior to trial, as secured by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution was violated in that defense counsel consented to the amendment of his First Degree Burglary indictment to an Attempted First Degree Burglary charge during the course of the proceedings without Petitioner's agreement to said amendment. (Question Two on PCR Certiorari)

(Doc. 1-1, pp. 2-17).

On January 13, 2016, the respondent filed a motion for summary judgment and the return (docs. 10, 11). The petitioner filed a response on March 31, 2016 (doc. 21).

8

## APPLICABLE LAW AND ANALYSIS

### Statute of Limitations

The petition in this case was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Accordingly, the provisions of the AEDPA apply. *Lindh v. Murphy*, 521 U.S. 320, 336-37 (1997).  The respondent first argues that the petition is untimely under the one-year statutory deadline set forth in the AEDPA. The one-year time period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[1]  However, "[t]he time during which a properly filed application for State post-conviction or collateral relief with respect to the pertinent judgment or claim that is pending shall not be counted toward any period of limitation under this subsection." *Id.* § 2244(d)(2).   State collateral review tolls the one-year statute of limitations under Section 2244(d)(1)(A) for properly filed pleadings, *Artuz v. Bennett*, 531 U.S. 4, 8 (2000), but it does not establish a right to file within one year after completion of collateral review. *Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir. 2000).

The petitioner was convicted by a jury and sentenced on March 17, 2006, the South Carolina Court of Appeals affirmed the petitioner's conviction and sentence on June 6, 2008, and the South Carolina Supreme Court denied certiorari on July 10, 2009. Accordingly, the petitioner's conviction became final on October 8, 2009 (90 days after certiorari was denied by the South Carolina Supreme Court for the possibility of seeking certiorari in the United States Supreme Court). *See* U.S. Sup. Ct. R. 13(1) (stating appellant must file a petition for a writ of certiorari within 90 days of the judgment being appealed); *Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54 (2012) ("[T]he judgment becomes final at the

---

[1]The statute provides other possible start dates for the one-year time period that are not relevant here.  *See* 28 U.S.C. § 2244(d)(1)(B)–(D).

'expiration of the time for seeking such review'—when the time for pursuing direct review in this Court, or in state court, expires.") (quoting 28 U.S.C. § 2244(d)(1)(A))).

The petitioner filed his PCR application on September 16, 2009, before the 90 days had lapsed, thereby tolling the federal statute of limitations. Therefore, no untolled time lapsed between the petitioner's conviction becoming final and the filing of the PCR application. The statute remained tolled until October 13, 2014, the date the remittitur was issued in the petitioner's PCR appeal (doc. 10-11). *See Caldwell v. Roberts,* C.A. No. 1:14-4277-RMG, 2016 WL 927151, at *5 (D.S.C. Mar. 7, 2016). Accordingly, the statute of limitations began to run on October 14, 2014. The petitioner filed his Section 2254 petition through counsel on October 14, 2015, 366 days after the statute of limitations began to run. Accordingly, the petition was one day late and is therefore time-barred.

In his response to the motion for summary judgment, the petitioner argues that the final disposition of his PCR appeal did not occur until the remittitur was filed on October 17, 2014, and, therefore, his petition is timely (doc. 21, p. 8). The petitioner relies on the decision of the Honorable Mary G. Lewis, United States District Judge, in *Beatty v. Rawski*, 97 F.Supp.3d 768, 775-76, 780 (D.S.C. 2015), in which Judge Lewis held that the final disposition of a PCR appeal in South Carolina occurs when the remittitur is filed in the circuit court, and thus the statute of limitations for a Section 2254 petition is tolled until that time. However, in *Caldwell*, the Honorable Richard M. Gergel, United States District Judge, the presiding judge in the instant case, found that "Supreme Court authority . . . requires that the Court calculate the tolling period as starting when the PCR application was properly filed, . . ., and ending the day after the appellate remittitur issued, . . . ." 2016 WL 927151, at *5 (citing *Gonzalez v. Thaler*, 132 S.Ct. 641, 653-54 (2012) and *Lawrence v. Florida*, 549 U.S. 327, 332 (2007)). Accordingly, the undersigned has utilized the date of the issuance of the remittitur as the date the petitioner's PCR appeal became final.

10

The petitioner further argues that, if the court finds the date of issuance of the remittur rather than the date of filing of the remittitur in the circuit court is the end date for tolling, the court should find "that equitable tolling is appropriate on the facts of this case where resolution of the procedural dispute before the Court deals with an interpretation of the law not yet addressed by a higher court" (doc. 21, p. 8). *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (concluding that § 2244(d) is subject to equitable tolling in appropriate cases). Equitable tolling is available only in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). *See also United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004). Thus, to be entitled to equitable tolling, an otherwise time-barred petitioner must present: "(1)  extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (*en banc*). Here, the undersigned has failed to show any of the requirements for equitable tolling. *See Jones v. South Carolina*, C.A. No. 4:05–2424–CMC–TER, 2006 WL 1876543, at *3 (D.S.C. June 30, 2006) ("Other courts addressing equitable tolling have found that 'extraordinary circumstances' are *not*: having an inadequate law library, ... claims of actual innocence, reliance on other inmates' advice, ignorance of the AEDPA filing deadline, or even (in some instances) petitioner illness.") (emphasis in original).

Based upon the foregoing, the petition is untimely under the one-year statutory deadline set forth in the AEDPA, and the respondent's motion for summary judgment on this basis should be granted. In the event the district court finds the petition is timely, the undersigned will consider the merits of the petitioner's grounds for relief.

11

***Summary Judgment Standard***

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

***Exhaustion***

Before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2)

12

by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. §§ 17–27–10,–90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C.1976).   The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990).   In *McKennedy*, the South Carolina Supreme Court specifically held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan [v. Boerckel*, 526 U.S. 838 (1999)]."  559 S.E.2d at 854.

The petitioner has exhausted his direct appeal and PCR remedies as a matter of right.  His claim in Ground One was raised and ruled upon in the direct appeal.  The petitioner raised the claims in Grounds Two through Five in PCR.  The PCR court dismissed his application, the petitioner appealed that dismissal, and certiorari was denied.  He has no further PCR remedies available to him.  Accordingly, the petitioner meets the exhaustion requirement of 28 U.S.C. § 2254(b)(1)(A).

### Merits

Under the AEDPA, federal courts may not grant habeas corpus relief on any claim that was adjudicated on the merits in state court unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1), (2). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). Moreover, state court factual

13

determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### Federal Petition Grounds

The grounds alleged by the petitioner, through counsel, are set forth above as they are alleged in the petition (*see* doc. 1-1).  However, in his response to the motion for summary judgment, it appears that the petitioner has addressed the grounds raised in his petition for writ of certiorari in the PCR appeal (doc. 10-7, pp. 2-3), rather than in his federal habeas petition (*see* doc. 1-1).  For instance, Ground Two in the petition (doc. 1-1, p. 7) is presented as Ground One in the petitioner's response to the motion for summary judgment (doc. 21, pp. 11-12), and Ground Five in the petition (doc. 1-1, p. 17) is presented as Ground Two of the petitioner's response to the motion for summary judgment (doc. 21, p. 16).  In his response, the petitioner does not address Ground One as presented in the petition (doc. 1-1, p. 2) at all.  The Ground Five argued in the petitioner's response in opposition to the motion for summary judgment (doc. 21, p. 24) was not raised in the petition (*see* doc. 1-1).  The only grounds addressed by the petitioner in the appropriate sequence are Grounds Three and Four (*see* doc. 1-1, pp. 11, 14; doc. 21, pp. 18, 22).  The undersigned will address only those grounds raised in the petition and will do so in the order they were raised in the petition and as addressed by the respondent in the motion for summary judgment (doc. 1-1, pp. 2-17; doc. 10, p. 8-9).

### Ground One

In his first ground, the petitioner contends that the trial court and Court of Appeals erred in excluding proffered evidence of a prior drug solicitation and presence of drugs found next to the body of the victim.  This issue was raised and denied on direct appeal.  The Court of Appeals found that evidence was properly excluded by the court during the trial as it was irrelevant and unfairly prejudicial. *State v. Lyles*, 665 S.E.2d 201,

207-08 (S.C. Ct. App. 2008).  As noted above, in his response in opposition to the motion for summary judgment, the petitioner does not respond to Ground One.

In his Section 2254 petition, the petitioner reasserts that proffered evidence unknown to him and his co-defendant (Jeter) before and at the time of the crime was admissible to corroborate their explanation for being at the crime scene – to buy drugs (doc. 1-1, pp. 2-7).  Jeter's counsel proffered the testimony of Robert Ledford, who had formerly lived next door to the apartment occupied by Spicer.  Ledford knew his neighbor as C.C., a short man with cornrows.  Ledford testified that there were many persons in and out of the apartment all the time, with a lot of loud music.  In October 2004, C.C. approached Ledford to buy drugs.  Not wanting to be part of a drug transaction, Ledford left immediately.  In the courtroom, Ledford failed to identify Spicer as C.C. (app. 400-408).  However, there was evidence that Spicer had sported braids during the time in question, but looked different at the time of trial (app. 549).  Jeter's counsel moved to allow Ledford to testify to corroborate the defendants' testimony that drugs were being sold at the apartment and that was the reason they went to the apartment.  Counsel for the petitioner joined the motion.  The trial court denied the motion, ruling that the resulting prejudice would outweigh the probative value of Ledford's testimony.  The trial judge further found that the evidence in question was not relevant to facts in issue in the case (app. 408-12).  The trial judge further excluded the proffered expert testimony of David Reeves, who tested the plant material in a hand-rolled cigarette found in Spicer's living room.  Reeves would have testified that the plant material tested positive for marijuana.  Both defendants joined in this proffer (app. 477-79).  These evidentiary rulings were consistent with a ruling at the beginning of trial prohibiting defense counsel from referring to drug sales in their opening statements.  At that time, the trial judge made it clear that he would not allow unrestricted cross-examination of Spicer about drugs (app. 66-74).  Counsel argued that the exclusion of all evidence of drugs would cripple the defense (app. 68).

In denying relief on this issue, the Court of Appeals concluded as follows:

Lyles avers the exclusion of testimony regarding prior drug sale solicitations at the apartment where the shooting occurred and the presence of drugs next to the victim constituted an abuse of discretion by the trial judge and was a denial of his due process rights. We disagree.

***

In the case *sub judice*, the evidence presented by Lyles was properly excluded. The trial judge correctly found no probative link between the proffered testimony and the pending charges. Lyles was on trial for murder, burglary in the first degree, armed robbery, and unlawful possession of a pistol by a person under the age of twenty-one. The testimony put forth by the defense, if accepted, would have established drugs were offered for sale outside of the apartment several months before the shooting by an individual known only as C.C. whose true identity remains unknown to the court. Additionally, there was evidence that a small quantity of partially-smoked marijuana was found near the victim. Lyles professes this evidence shows that he and Jeter were truthful in their assertions of venturing to the apartment to purchase drugs. Defense counsel argued this went directly to the credibility of Lyles and Jeter. Nevertheless, these contentions miss the mark. Even if factual, the testimony does not serve as a defense to any of the offenses charged in this case nor does it excuse or mitigate Lyles' actions. It is not probative of any issue material to reaching a verdict. This absence of a logical connection to the facts in debate makes the evidence irrelevant and inadmissible.

Additionally, even if the testimony were relevant to the controversy, the trial judge correctly ruled it was inadmissible as unfairly prejudicial. The evidence is prejudicial because it stands to suggest a decision on an improper basis. By potentially insinuating a key witness for the State is a drug dealer and drugs were present next to the victim, the testimony could unfairly impugn the character of Spicer and Howze and cloud the issues. The risk of confusion or misdirection requires an analysis under Rule 403, SCRE. Given the tenuous probative link, the prejudicial effect outweighs any value the evidence may hold. Moreover, we are obligated to give great deference to the decision of the trial judge in this matter and should only reverse in exceptional circumstances when there is a clear abuse of discretion. After a thorough review of the record, we find no abuse of discretion. There is no error of law

16

in the trial judge's discretionary ruling. The details of the present case do not warrant reversal. . . .

Lyles contends the exclusion of the testimony deprived Lyles of his due process right to present witnesses in his own defense. We disagree.

\*\*\*

The trial judge in the case at bar did not abuse his discretion by excluding the testimony tendered by the defense. While Lyles has a fundamental right to present a complete defense, including the right to call witnesses on his own behalf, this right does not supersede any pertinent evidentiary rules. The testimony was inadmissible as irrelevant and unfairly prejudicial under the South Carolina Rules of Evidence. These rules are consistent with the Constitution and cannot be considered arbitrary or disproportionate to the ends they serve. Lyles is not entitled to offer evidence deemed inadmissible by these rules as part of his defense. Even though Lyles was prevented from introducing certain evidence at trial, his right to present a complete defense was not abridged due to the overriding purpose of the exclusionary rules barring this testimony. Resultantly, Lyles' due process rights were not violated. . . .

The State advances in the alternative any error in the exclusion of the testimony was harmless. We agree.

\*\*\*

After reviewing the record, we conclude any error in the exclusion of the proffered testimony would have no impact on the outcome of the case. All the elements of the crimes charged were proven beyond a reasonable doubt and no other rational conclusion could be reached. The excluded evidence, if admitted, would have had no impact on the verdict reached by the jury. Therefore, any error committed was harmless.

*State v. Lyles*, 665 S.E.2d 201, 205-10 (S.C. Ct. App. 2008).

Relief in a federal habeas action is only available to petitioners in "custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Issues of state law are generally not cognizable in habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine

17

state-court determinations on state-law questions... a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Evidentiary rulings are generally considered state law matters. *Spencer v. Murray*, 5 F.3d 758, 763 (4th Cir. 1993) ("claim about the admissibility of evidence under state law rarely is a claim upon which federal habeas corpus relief can be granted."). Evidentiary rulings will not be considered in federal habeas "'unless [the] erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding.'" *Barbe v. McBride*, 521 F.3d 443, 452 (4th Cir.2008) (quoting *Burket v. Angelone*, 208 F.3d 172, 186 (4th Cir.2000)).

The Court of Appeals' decision was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the court applied the applicable Supreme Court precedent in considering whether the petitioner's due process right to present witnesses in his own defense was deprived. *Lyles*, 665 S.E.2d at 208-209. Second, the record fails to demonstrate the court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Further, the record supports the court's determination that the petitioner's due process rights were not violated. The petitioner fails to articulate how the evidence at issue is relevant to his own intent and how it relieves him from responsibility for the crimes. He asserts it supports his "credibility" as to the reason he was at the apartment where the victim died, i.e., to buy drugs, but fails to show how it is a defense to the crimes with which he was charged. The Court of Appeals reasonably concluded that the trial court correctly used its discretion in determining that Ledford's testimony was irrelevant and the prejudicial nature of Ledford's testimony outweighed its probative value (app. 399-411). Further, the Court of Appeals reasonably concluded that the trial court correctly used its discretion in finding that evidence of the partially smoked marijuana cigarette found near the victim was irrelevant (app. 477-79).

These exclusions, supported by the record, did not deprive the petitioner of his "right to present a meaningful defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984) ("Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense."). As the petitioner has not shown that the South Carolina courts' rejection of this ground was contrary to, or an unreasonable application of, Supreme Court precedent, he is not entitled to habeas relief on this ground.

### Ground Two

In Ground Two, the petitioner argues that defense counsel was ineffective for failing to call his brother, Leonard Lyles, as a witness to support the petitioner's testimony that he had previously gone to Spicer's home to purchase marijuana (doc. 1-1, p. 7). As noted above, the petitioner addresses this ground in his response to the motion for summary judgment as Ground One (doc. 21, pp. 11-16).

This issue was raised at PCR and was denied by the PCR judge. The petitioner raised the issue in the PCR appeal in his petition for writ of certiorari, which was denied (doc. 10-7, pp. 2-3). In denying relief, the PCR court concluded:

> The Applicant argued that Counsel was ineffective for failing to call his brother as a witness, to support his testimony that he had previously gone to Mr. Spicer's home to purchase marijuana. This Court finds that Counsel offered a reasonable explanation for not calling Applicant's brother as a witness. Counsel testified at the September 2010 PCR hearing that he did not consider calling Applicant's brother as a witness because the brother had been arrested and Counsel did not want to bring the brother's record out. Applicant's brother acknowledged that he is serving time currently for charges of robbery, burglary, and pointing and presenting a firearm, which at the time of Applicant's trial, he had been arrested for and was located in the Spartanburg County Detention Center. Our courts are understandably wary of second-guessing defense counsel's trial tactics. Where counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will

19

not be deemed ineffective assistance. *Whitehead v. State*, 308 S.C. 119, 417 S.E.2d 530 (1992). *See also Dempsey v. State,* 363 S.C. 365, 610 S.E.2d 812 (2005); *McLaughlin v. State*, 352 S.C. 476, 575 S.E.2d 841 (2003). This Court finds that the Applicant failed to show that Counsel was deficient in that choice of tactics.

This Court also finds that even if Counsel had attempted to have Applicant's brother testify regarding his previous visit to Mr. Spicer's apartment with Applicant to purchase marijuana, it is likely that the trial court would not have allowed the testimony. Applicant's brother testified at the June 2011 hearing that he would have testified for his brother had he been asked. However, Applicant's brother could only offer testimony that he could recall one time previously that he and his brother, the Applicant, had been to Mr. Spicer's apartment to purchase marijuana. The record reflects that the issues raised in Applicant's direct appeal were directly related to the exclusion of evidence related to any alleged drug sales from Mr. Spicer or his apartment and the evidence of a partially burnt marijuana cigarette found in the apartment. The South Carolina Court of Appeals affirmed Applicant's conviction and sentence, while finding the trial court's decision to exclude the evidence proper. *State v. Lyles*, 379 S.C. 328, 340, 665 S.E.2d 201, 207 (S.C. Ct. App. 2008). The Court found that, "[e]ven if factual, the testimony does not serve as a defense to any of the offenses charged in this case nor does it excuse or mitigate Lyles' actions. It is not probative of any issue material to reaching a verdict. This absence of a logical connection to the facts in debate makes the evidence irrelevant and inadmissible." *Id*. There was no connection of time or obvious connection between the past purchase of marijuana and the crime that occurred. Generally, evidence of prior drug use is found to be inadmissible as part of the *res gestae* of a crime, where the record does not support any relationship between the charged crime and the drug use. *State v. Broaddus*, 361 S.C. 534, 540, 605 S.E.2d 579, 582 (S.C. Ct. App. 2004). Therefore, this Court finds that the Applicant has failed to meet his burden as to this claim and it should be dismissed and denied.

(App. 987-88).

To be entitled to relief on an ineffective assistance claim, a petitioner must show that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S.668,

687–94 (1984). *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* at 687 (quoting *McMann v. Richardson*, 397 U. S. 759, 770 (1970)). There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case. *Id.* at 690.

The review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citations omitted).

At the June 2011 PCR hearing, Leonard Lyles testified that he had witnessed the petitioner purchase marijuana from Spicer at the apartment where the shooting occurred on at least one occasion. He further testified that he would have testified to this information if he had been asked to appear for the defense at the petitioner's trial (app. 953-54). Leonard Lyles acknowledged that he is currently serving time for charges of robbery, burglary, and pointing and presenting a firearm and that, at the time of the petitioner's trial, he had been arrested and was located in the Spartanburg County Detention Center (app. 951).

The petitioner testified at trial that he had been to Spicer's apartment three or four times to purchase marijuna, and the reason for going to the apartment the night of the shooting was to purchase marijuana (app. 550-51). Spicer testified at trial that the petitioner had been present in his home on one previous occasion with his brother, Leonard, to play video games (app. 125-27).

Trial counsel, Mr. Vieth, testified at the PCR hearing that he did not recall discussing the option of calling the petitioner's brother to corroborate the petitioner's testimony that Spicer previously sold marijuana to him. He stated that he would not have considered the petitioner's brother to be a good witness because of his arrest record (app. 836-37).

The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent (app. 986-87). Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. The PCR court concluded that the petitioner failed to establish that trial counsel's representation fell below an objectively reasonable standard or any resulting prejudice (app. 987-88).

Further, the record supports the PCR court's determination. Counsel offered a valid and reasonable explanation for not calling Leonard Lyles as a witness. As noted above, Counsel Vieth testified that he did not consider calling the petitioner's brother as a witness because he had been arrested and counsel did not want to bring his record out (app. 837). The petitioner argues that trial counsel's reason for not calling Leonard as a witness is deflated by the other evidence presented at the PCR hearings. Specifically, the petitioner notes that trial counsel's own direct examination of the petitioner at trial elicited the information about the brother's arrest on the night of the shooting on an earlier assault

22

charge (app. 548-49). However, as noted by the respondent, testimony indicating that the petitioner's brother was questioned and picked up by the police on the night of the incident was presented by the co-defendant, Joshua Jeter, prior to the testimony of the petitioner or any of his family at trial (app. 429-30). Moreover, counsel objected several times to questions regarding Leonard's troubled past during the cross-examination of the petitioner's mother at trial (app. 524-25).

Furthermore, the petitioner cannot show prejudice from trial counsel's alleged error because, as the PCR court found, even if trial counsel had attempted to have the Leonard testify regarding his previous visit to Spicer's apartment with the petitioner to purchase marijuana, the trial court likely would not have allowed the testimony. The petitioner's brother could only offer testimony that he could recall one time previously that he and his brother had been to Spicer's apartment to purchase marijuana (app. 954-55). The issues raised in the petitioner's direct appeal and discussed above in Ground One were directly related to the exclusion of evidence related to any alleged drug sales from Spicer and the evidence of a partially burnt marijuana cigarette found in the apartment. As set out above, the South Carolina Court of Appeals affirmed the petitioner's conviction and sentence, while finding the trial court's decision to exclude the evidence was proper. *Lyles*, 665 S.E.2d at 207. Specifically, the court found that "[e]ven if factual, the testimony does not serve as a defense to any of the offenses charged in this case nor does it excuse or mitigate Lyles' actions. It is not probative of any issue material to reaching a verdict. This absence of a logical connection to the facts in debate makes the evidence irrelevant and inadmissible." *Id*. Accordingly, the evidence supports the PCR court's finding that defense counsel's failure to call Leonard as a witness was neither deficient nor prejudicial, and, therefore, this claim fails.

***Ground Three***

In his third ground, the petitioner contends that counsel was ineffective in failing to object to the charge on accomplice liability and in failing to request a a clarifying instruction (doc. 1-1, pp.11-14). This issue was raised at the PCR hearing and denied by Judge Couch in the written order (app. 991-93). It was also raised at PCR appeal as Question III in the certiorari petition.

Defense counsel testified at the PCR hearing that the petitioner's main defense at trial was "mere presence," because the petitioner admitted going to the apartment to purchase drugs, but denied knowing that his co-defendant intended to rob anyone (app. 863). The petitioner argues that the accomplice liability charge offered by the trial judge appeared to shift the burden to the petitioner, and his trial counsel should have objected to it (doc. 1-1, pp. 11-14). The petitioner objects to the following portion of the accomplice liability jury instruction given by the trial judge:

> Now, the common purpose may not have been to kill anyone at all, but if, during the commission of a felony such as burglary in the first degree or armed robbery, a homicide is committed by one of the participants which is a natural or probable consequence of the acts done in furtherance of the common plan, then each person who is present aiding, abetting, assisting or participating in the common plan is equally guilty of any homicide accomplished thereby and which is a natural and probable consequence of those criminal acts.

(App. 713-14).

A similar issue was raised in *Lowry v. State*, 657 S.E.2d 760 (S.C. 2008). In *Lowry*, the Supreme Court of South Carolina found as follows:

> We find that the trial court's supplemental instruction on felony murder unquestionably shifted the burden of proof for the malice element of murder from the State to Petitioner. Viewed in its entirety, the supplemental jury charge contained no permissive language indicating that the jury may infer malice from Petitioner's participation in the armed robbery. Instead, the charge simply provided that if the jury first determined that a killing occurred in the course of the armed robbery, it must find

24

> Petitioner guilty of murder. In this way, the charge created a
> mandatory presumption of the malice element in the crime of
> murder instead of permitting the jury to find malice upon the
> State's proof of the element beyond a reasonable doubt. Both
> this Court and the United States Supreme Court have
> consistently held that such mandatory presumptions of malice
> violate a defendant's due process.

657 S.E.2d at 764.  In considering this issue, the PCR court noted that in *Lowry* the court essentially instructed "the jury that if someone was killed during the commission of a felony, then they must find the defendant guilty of murder" (app. 980-81 (citing *Lowry*, 657 S.E.2d at 506)).  However, the PCR court found the petitioner's case was distinguished from *Lowry* in that the trial court instructed "the jury that they were 'allowed to infer' malice based on the circumstances, from use of a deadly weapon, and that they are 'permitted to infer' malice from commission of criminal acts resulting in death" (app. 980 (citing app. 708-9)).  The PCR court found that in the petitioner's case, "the jury was given permission to infer malice; however, it was left up to the jury to make their decision based on the evidence and testimony presented to them.  Therefore, the burden was not improperly shifted to the defendant in this case" (app. 981).

The petitioner also argued in the PCR hearing that since at trial he only testified that he intended to go to Spicer's apartment to purchase $10 worth of marijuana, which is not enough to qualify as a felony, defense counsel should have requested a supplemental clarifying instruction that simple possession or attempted simple possession of marijuana is not a felony (app. 861-62).  The PCR court found that this would have been a completely unnecessary and confusing jury charge (app. 992).  The PCR court noted that the jury had the option of believing the petitioner's testimony that he had only gone to Spicer's apartment to purchase a small amount of marijuana and that he was unware of his co-defendant's plan to try and rob Spicer.  If the jury accepted the petitioner's mere presence defense, he would have been found not guilty of the felony charges of attempted

25

burglary and attempted armed robbery and not guilty of the murder charge as well (app. 992).

The PCR court further noted that the petitioner's trial counsel did request a jury charge on involuntary manslaughter, but that request was denied with the trial judge finding that although both defendants denied committing acts leading to murder, the evidence indicated actions including pointing and presenting a firearm, which was a felony and would not allow for the involuntary manslaughter charge (app. 992; *see* app. 623-24). The PCR court concluded:

> Applicant offered nothing to support his argument that had the jury heard a jury charge that purchasing a small amount of marijuana was not a felony, the outcome of Applicant's trial would have been different. Therefore, this court finds that the Applicant has failed to meet his burden of proof as to this claim and it should be denied and dismissed.

(App. 992-93).

The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent (app. 986-87). Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. The PCR court concluded that the petitioner failed to establish that his trial counsel's representation fell below an objectively reasonable standard or any resulting prejudice (app. 991-93).

Further, the record supports the PCR court's determination. In his response in opposition to the motion for summary judgment, the petitioner argues that he was not charged with pointing and presenting a firearm, and the jury received no instructions on the law related to that offense. Accordingly, the jury could not have considered that felony in

deciding the accomplice liability issue, and, if the jury believed the petitioner's version of the facts, he did not point and present a firearm (doc. 21, pp. 21-22). The respondent acknowledges that the petitioner is correct that he was not charged with pointing and presenting a firearm, but he was charged with unlawful possession of a pistol by a person under 21 years of age, which is a felony (app. 811). *See* S.C. Code Ann. §§ 16-23-30(B)[2], -50 (2006).

Based upon the foregoing, the undersigned finds that the PCR court reasonably applied *Strickland* in finding that trial counsel's performance was not deficient and that prejudice had not been shown. As the PCR court's rejection of this ground was neither contrary to, nor an unreasonable application of, Supreme Court precedent, the petitioner is not entitled to habeas relief on this ground.

### Ground Four

In his fourth ground for relief, the petitioner asserts that his trial counsel erred in failing to object at trial to evidence suggesting that he came from a "bad family," including evidence of ammunition left lying around the petitioner's home, testimony regarding his mother's actions at the police station, and failing to advise the petitioner to avoid mentioning his brother's arrest on an unrelated charge on the night of the shooting (doc. 1-1, pp. 14-17). This broad issue was raised at the PCR hearing and two of the sub-issues (regarding ammunition and the petitioner's mother's actions at the police station) were denied by the PCR judge (app. 989-91). The issue was raised by the petitioner in the petition for writ of certiorari in the PCR appeal (doc. 10-7, pp. 2-3).

The respondent argues that defense counsel revealed a sound strategic basis for not objecting to the testimony about ammunition. This court agrees. The petitioner's trial counsel testified that he intended all along to have the petitioner's mother testify to the

---

[2]The statute was amended in 2008 to change the relevant age to 18 years of age. *See* S.C. Code. Ann. § 16-23-30 (2016); 2008 South Carolina Laws Act 192.

presence of the bullets in the home because of her husband being an ex-Marine and owning weapons (app. 897; *see* app. 664-65). Counsel testified that he knew all along that the State did not have the murder weapon and that the petitioner's mother could explain all weapons and ammunition found at the home (app. 897). He further testified that he specifically let some non-relevant evidence in without objection, so that he could later emphasize during closing argument the amount of irrelevant evidence the State was introducing and equate the State's case to essentially a witch hunt (app. 852-53, 859). The state PCR court rejected this claim of ineffective assistance, finding that trial counsel had articulated valid reasons for employing a certain strategy and that, even if counsel's performance was deficient, there was no prejudice given the overwhelming evidence of the petitioner's guilt (app. 989-91).

The petitioner also argued at PCR that defense counsel was ineffective for failing to object when testimony was elicited on cross-examination by the State of the petitioner's mother regarding her behavior at the police station after she found out her son had been arrested. The testimony elicited from the mother related to her yelling and cursing (app. 519-21). Defense counsel testified that, although the testimony was irrelevant to the petitioner's guilt or innocence, he felt that the information was not harmful in that it would not be an unreasonable reaction from a mother if her child had been arrested (app. 856-57). Moreover, counsel testified that he believed the petitioner's mother and thought she was a good witness even with the presentation of her reaction to her son's arrest (app. 897-98). Counsel also testified that he felt the jury might be able to relate to her response because the petitioner's mother was protective of her son while at the same time angry and yelling at him (app. 900-901).

The PCR court found that, in regard to letting some irrelvant testimony in, trial counsel articulated a sufficient and reaonable strategic reason for doing this. Specifically,

trial counsel could later emphasize in closing argument the amount of irrelevant evidence the State introduced and equate the State's case to a witch hunt (app. 990).

The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent (app. 986-87). Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. The PCR court concluded that the petitioner failed to establish that his trial counsel's representation fell below an objectively reasonable standard or any resulting prejudice (app. 989-90). Further, the record supports the PCR court's determination that the petitioner's trial counsel articulated a valid strategic basis that is entitled to deference under *Strickland* and *Harrington*.

The petitioner also argues that his trial counsel was ineffective in allowing him to testify that his brother was arrested on an unrelated offense earlier on the night of the shooting (doc. 1-1, p. 14). During direct examination, trial counsel allowed his client to tell his own full version of the events occurring on the night of this incident. He only briefly interrupted with questions pertaining to the time of day or asking for clarification (app. 547-48). During the petitioner's answer, he mentioned the fact that he was with his brother, Leonard Lyles, and that Leonard was arrested and taken to jail earlier that night on an unrelated assault charge (app. 548-49). On cross-examination, the attorney for the petitioner's co-defendant asked again about Leonard's arrest (app. 591).

The PCR judge did not rule on this specific issue in the order of dismissal, and the petitioner did not file a Rule 59(e) motion. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007) (finding that if the PCR court fails to address a claim as is required by S.C. Code § 17–27–80, counsel for the applicant must make a motion to alter or amend the judgment

pursuant to Rule 59(e), SCRCP to preserve the issue for appellate review).[3]  Accordingly, this issue is barred from habeas review, *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), unless the petitioner "demonstrates cause for the default and prejudice from the asserted error."' *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 536 (2006)).  The petitioner has failed to demonstrate cause and prejudice, and, therefore, this claim is procedurally barred.

Alternatively, the respondent argues that defense counsel was not ineffective for allowing the petitioner to offer testimony relating to his brother's arrest.  The undersigned agrees.  Defense counsel testified that he did not intend to elicit this testimony.  Defense counsel further testified that he gave the petitioner "kind of an unbridled ability to tell the jury what happened that night," because he thought it was better for the petitioner to just look at the jury and tell them what the events of the day were (app. 855).  As noted by the respondent, the freedom defense counsel gave to the petitioner during his direct examination came with the risk that the petitioner might go into material that was not strictly relevant or helpful to the case.  However, this was a tactical decision.  Further, as discussed above in Ground Two, testimony indicating that the petitioner's brother was questioned and picked up by the police on the night of the incident had been presented by the petitioner's co-defendant, Joshua Jeter, prior to the testimony of the petitioner or any of his family at trial (app. 429-30).  Based upon the foregoing, the petitioner has not shown that his trial counsel's performance was deficient or that a reasonable probability exists that, but for

---

[3]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

counsel's error, the result of that proceeding would have been different.  Based upon the foregoing, this ground for relief is without merit.

***Ground Five***

In his final ground, the petitioner contends that his counsel was ineffective in consenting to an amendment in his indictment from first degree burglary to attempted first degree burglary (doc. 1-1, pp. 17-19).  This issue was raised in the state PCR hearing and denied by Judge Couch (app. 993) and was raised in the PCR appeal in the petition for writ of certiorari (doc. 10-7, pp. 2-3).  As noted above, the petitioner addresses this ground in his response to the motion for summary judgment as Ground Two (doc. 21, pp. 16-18).

The trial record reflects that the colloquy regarding attempted burglary first degree began in discussions regarding the jury charge (app. 612-13).  The State asserted that some jurors might get confused or concerned that the full body never entered the residence (*id*.).  Counsel for both defendants agreed that they had no problem with the jurors being charged with "attempted burglary" (app. 613).  The fact that attempted burglary was to be charged was then placed again on the record in open court (app. 618).

The jury was charged with burglary in the first degree (app. 700-04) as well as the law on attempt (app. 705-706).  The trial judge informed the jury that they would receive three verdict forms as it related to the indictment of burglary – 1st degree, which would provide for the options of either a verdict of guilty of burglary – 1st degree, guilty of attempted burglary – 1st degree, or not guilty of burglary – 1st degree (app. 717-18).  No objection was made to the instructions concerning burglary (app. 722).

Ultimately, the jury found the petitioner guilty of attempted burglary – 1st degree (app. 725).  He received a sentence of ten years on that charge, to run concurrent with the other sentences received that day (app. 734).

At the PCR hearing, the petitioner's trial counsel testified that he had no specific recollection as to any conversations with the State regarding his consent to the

additional charge of attempted burglary – 1st degree; however, he also testified that he was

sure he would have consented to that request (app. 833).

> In its order of dismissal, the PCR court concluded as follows:

> The Applicant also argued that Counsel was ineffective for failing to consult with him regarding consenting to the State's request to amend the burglary – 1st degree indictment to an attempted burglary indictment during trial. Counsel testified that he had no specific recollection as to the conversation with the State regarding the amendment. The record reflects that the conversation regarding attempted burglary – 1st began in discussions regarding the jury charge. The judge informed the jury and Counsel that he was charging the jury with the law as it related to the crimes of burglary – 1st degree and attempted burglary – 1st degree. Ultimately, the jury found the Applicant guilty of attempted burglary – 1st degree and he received a sentence of ten years on that charge, to run concurrent with the other sentences received that day.

> This Court finds that even if Counsel was deficient for failing to discuss with Applicant and object to the possible amended indictment, Applicant has failed to demonstrate any prejudice he suffered by any alleged deficient representation. It would be speculation to surmise that the jury would have found Applicant non guilty of the burglary – 1st degree charge if the attempted charge were not an option. Applicant received a ten year sentence as well, which is substantially lower than most sentences received for burglary – 1st degree and runs concurrent with the life sentence he received on the murder charge. Therefore, this claim is denied and dismissed.

(App. 993).

The petitioner asserts that the indictment should not have been amended to

include the attempted burglary charge because it changed the nature of the offense and

was not a lesser included offense.  Under appropriate circumstances, amendments may

be made to indictments subsequent to the swearing of the jury. *See State v. Myers*, 438

S.E.2d 236, 237 (S.C. 1993) (stating that an indictment may be amended if "1) it does not

change the nature of the offense; 2) the amended charge is a lesser included offense of the

32

original crime charged in the indictment; or 3) the defendant waives presentment to the grand jury and pleads guilty"); S.C. Code Ann. § 17–19–100 (providing that, if it does not change the nature of the offense charged, the court may amend an indictment under certain circumstances, including when "on the trial of any case there shall appear to be any variance between the allegations of the indictment and the evidence offered in proof thereof ...").

In *State v. Green*, 753 S.E.2d 259, 261 (S.C. Ct. App. 2014), the Court of Appeals found that the trial court did not impermissibly change an indictment when it included and charged the jury with attempted burglary. The state court found as a matter of state law:

> "To prove attempt, the State must prove that the defendant committed an overt act, beyond mere preparation, in furtherance of the intent to commit the crime." *State v. Reid*, 713 S.E.2d 274, 276 (2011) (citing *State v. Nesbitt*, 550 S.E.2d 864, 866 (Ct. App.2001)). "[W]here an attempt crime exists, it is properly considered a lesser included offense of the completed offense, so long as the completed offense is a felony." *State v. Elliott*, 552 S.E.2d 727, 734 (2001) (Pleicones, J., dissenting) overruled on other grounds by *State v. Gentry*, 610 S.E.2d 494 (2005) (citing *State v. Hiott*, 276 S.E.2d 163 (1981)). Notably, in *Hiott*, the state supreme court found no logic in the defendant's position that an attempted offense is not a lesser included offense in the completed offense because incompletion of the offense is in itself a separate and distinct element. 276 S.E.2d at 168. In *State v. Murphy*, 471 S.E.2d 739 (Ct. App.1996), the court stated that:
>
> > [a]ssault is an unlawful attempt or offer to commit a violent injury upon another person, coupled with the present ability to complete the attempt or offer by a battery. Assault differs from assault and battery in that there is no touching of the victim in an assault. Accordingly, [assault of a high and aggravated nature] is a lesser included offense of [assault and battery of a high and aggravated nature], without the completed act of violence.
>
> 471 S.E.2d at 741 (internal citation omitted).

> We find that the trial court was correct in ruling that attempted first degree burglary is a lesser-included charge for the charge of first degree burglary. Similar to the situation in *Murphy*, here, attempted first degree burglary is a lesser included offense of first degree burglary, without the completed act of entering the premises. Thus, we affirm the trial court's decision to instruct the jury on the charge of attempted first degree burglary.

*Id.* at 261.

In light of the above case law, since the attempt crime is a lesser offense of burglary, counsel was not deficient in failing to object or to request the petitioner's consent to the instruction. To the contrary, counsel's action was consistent with state law as supported by the ruling in *Green,* to which this court must give deference. Based upon the foregoing, the undersigned finds that the PCR court reasonably applied *Strickland* in finding that trial counsel's performance was not deficient and that prejudice had not been shown. As the PCR court's rejection of this ground was neither contrary to, nor an unreasonable application of, Supreme Court precedent, the petitioner is not entitled to habeas relief on this ground.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 11) be granted and the petitioner's Section 2254 petition be dismissed.

s/ Kevin F. McDonald
United States Magistrate Judge

July 25, 2016
Greenville, South Carolina

34

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).