# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Lance Lyles, | No. 6:15-cv-04229-RMG |
| Petitioner, | **ORDER** |
| vs. | |
| Warden Cecelia Reynolds, | |
| Respondent. | |

This matter comes before the Court on the Report and Recommendation (R & R) of the Magistrate Judge (Dkt. No. 23), recommending that Respondent's Motion for Summary Judgment be granted and the habeas petition be dismissed. For the reasons stated below, the Court **ADOPTS IN PART** the R & R, **GRANTS** Respondent's Motion for Summary Judgment, and **DISMISSES** the habeas petition.

## I. Background[1]

In 2005 and 2006, Petitioner was indicted for murder, burglary-first degree, attempted armed robbery, and unlawful possession of a pistol by a person under 21. These charges arose out of an incident on December 8, 2004, when Petitioner and a co-defendant approached the apartment of Clarence Spicer. Spicer testified that one man had a mask and a gun and the other man had a hood covering his face. Spicer testified that when he tried to close the door on the two men, one of them shot inside his home. That shot killed Tavaris Howze. At trial, each defendant

---

[1] Neither party objects to the R&R's recitation of relevant procedural background on pages 1-8. The Court adopts this portion of the R&R and only includes a brief summary here.

claimed that the other was the shooter and both claimed that they had originally gone to the apartment to purchase drugs from Spicer and not to rob him.

On March 17, 2016, after a jury trial, Petitioner was convicted of all charges except burglary; the jury instead found Petitioner guilty of attempted burglary. The trial court sentenced Petitioner to life for the murder conviction and to various lesser sentences on the other convictions, all to run concurrently. The South Carolina Court of Appeals affirmed the conviction and sentence on direct appeal, and the South Carolina Supreme Court denied certiorari. Petitioner filed an application for post-conviction relief (PCR), which was dismissed on November 1, 2011. The South Carolina Court of Appeals denied Petitioner's petition for certiorari. Remittitur was issued on October 13, 2014, and filed with the Circuit Court on October 17, 2014.

The instant federal petition was filed on October 14, 2015, raising five grounds for relief. (Dkt. No. 1). The Magistrate Judge recommended dismissing the entire petition as untimely under the statute of limitations. The Magistrate Judge also considered the merits of Petitioner's grounds for relief and recommended granting summary judgment to Respondent on all five grounds. Petitioner filed timely objections to portions of the R&R. (Dkt. No. 31).

## II. Legal Standard

### A. Report & Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28

-2-

U.S.C. § 636(b)(1). This Court is charged with making a *de novo* determination of those portions of the R & R or specified proposed findings or recommendations to which objection is made. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting 28 U.S.C. § 636(b)(1)); *accord* Fed. R. Civ. P. 72(b).

As to portions of the R & R to which no specific objection has been made, this Court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Id.* (quoting Fed. R. Civ. P 72 advisory committee note). Moreover, in the absence of specific objections to the R & R, the Court need not give any explanation for adopting the Magistrate Judge's analysis and recommendation. *See Camby v. Davis*, 718 F.2d 198, 199-200 (4th Cir. 1983).

### B. Federal Habeas Review

Petitioner's claims are governed by 28 U.S.C. § 2254(d), which provides that his petition cannot be granted unless the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). Importantly, "a determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the

burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### C. Habeas Review of Ineffective Assistance of Counsel

Where allegations of ineffective assistance of counsel are made, the question is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). First, the Petitioner must show that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. *Id.* at 687-88. Second, the Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

"The standards created by *Strickland* and § 2254(d) are both highly deferential . . . and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011). In applying § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland'*s deferential standard." *Id.*

### III. Discussion

### A. Statute of Limitations

There is a one-year statutory deadline for filing a federal habeas petition. 28 U.S.C. § 2244. The statute begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* at § 2244(d)(1)(A). the statute is tolled during the pendency of PCR proceedings. *Id.* at § 2244(d)(2).

-4-

Here, Petitioner filed his PCR action before the time expired for him to file a direct appeal to the United States Supreme Court. Therefore, the one-year statute did not actually begin running until his PCR proceeding was no longer "pending."

This Court has previously addressed whether the tolling period ends (i.e., whether the PCR proceeding is no longer "pending") on the date of the final state appellate decision or on the date of remittitur and held that the tolling period ends on the date of remittitur. *Caldwell v. Roberts*, No. CV 1:14-4277-RMG, 2016 WL 927151, at *4-5 (D.S.C. Mar. 7, 2016). This case raises a different issue, whether the tolling period ends on the date remittitur is issued on or the date remittitur is filed with the South Carolina Circuit Court. Here, remittitur was issued in Petitioner's PCR appeal on October 13, 2014, but the remittitur was not filed with the South Carolina Circuit Court until October 17, 2014. The instant Petition was filed on October 14, 2015. Thus, the Petition is untimely if the PCR proceeding was no longer "pending" as of the date remittitur was issued but timely if the PCR proceeding was pending until the date remittitur was filed with the Circuit Court.

The Honorable Mary G. Lewis addressed this issue in a well-reasoned, published opinion. *See Beatty v. Rawski*, 97 F. Supp. 3d 768, 772-76 (D.S.C. 2015), appeal dismissed, 633 F. App'x 832 (4th Cir. 2016). Judge Lewis noted that South Carolina's highest courts have uniformly held disposition of an appeal is not final until remittitur is filed in the Circuit Court. *Id.* at 774 (citing cases). She then reviewed relevant Supreme Court precedent and held that this precedent allows South Carolina's rule regarding finality "to determine when the petitioner's 'application has achieved final resolution through the State's postconviction procedures.'" *Id.* at 775 (quoting *Lawrence v. Florida*, 549 U.S. 327, 332 (2007)). This Court agrees with the reasoning and

-5-

conclusion of *Beatty v. Rawski*, and holds that a South Carolina PCR proceeding is "pending" under Section 2244(d)(2) until remittitur is filed in the Circuit Court.

The Magistrate Judge noted that in *Caldwell*, this Court stated that the tolling period ended "the day after the appellate remittitur issued." *Caldwell v. Roberts*, 2016 WL 927151 at *5. However, in *Caldwell*, the only issue before the Court was whether the statute was tolled until the date of the appellate decision or the date of appellate remittitur. The Court did not consider the question raised here, whether the statute is tolled until the date remittitur issues or until remittitur is filed in circuit court, and the Court's statement was not a holding on this question.

Therefore, the Court declines to adopt the R&R's analysis of the statute of limitations and proceeds to address the merits of Petitioner's grounds for relief.

### B. Grounds One, Four, and Five

Petitioner has not objected to the Magistrate Judge's findings with regard to the merits of Grounds One, Four and Five. The Court has carefully reviewed the parties' briefing and the R&R and concludes that the Magistrate Judge correctly applied the relevant law to the operative facts with regard to these grounds and adopts the R&R's findings with regard to these grounds and grants summary judgment on these grounds.

### C. Ground Two

In Ground Two, Petitioner alleges that his trial counsel was ineffective for not calling Petitioner's brother, Leonard Lyles, as a witness to corroborate Petitioner's testimony that he went to the victim's apartment on December 8, 2004, to purchase marijuana. (Dkt. No. 1-1 at 7). Petitioner raised this issue in his PCR proceeding. The PCR court found that (1) trial counsel

offered a reasonable explanation for not calling Mr. Lyles, namely that he did not want to bring out Mr. Lyle's arrest and criminal charges that occurred on the night in question and (2) that even if trial counsel had attempted to have Mr. Lyles testify, it is likely that the trial court would not have allowed the testimony. (Dkt. No. 10-4 at 490-91). Thus, the PCR court found that trial counsel was not ineffective under *Strickland*. (*Id.*). The Magistrate Judge found that the PCR court appropriately applied *Strickland* and that its application of *Strickland* in this instance was not unreasonable. (Dkt. No. 23 at 22-23). This Court agrees.

Petitioner argues that the explanation given by trial counsel is not credible because trial counsel "himself brought out the fact that Leonard Lyles had been arrested on the evening of the shooting . . . in his own direct examination of Petitioner."[2] (Dkt. No. 31 at 13). The Court disagrees. Trial counsel made no attempt to specifically elicit this testimony. He allowed Petitioner to tell his story:

> And on the date of this incident that we are talking about, I think it's going to be easier just to let you tell this jury what you remember about the events after you got out of school. What happened throughout the balance of that day? Just take your time and tell them what happened.

(Dkt. No. 10-14 at 50). The fact that Petitioner mentioned his brother's arrest in a long narrative does not lead to the conclusion that trial counsel intentionally elicited the testimony and that he

---

[2] In his objections, Petitioner takes issue with the Magistrate Judge's statement that information regarding Lyles' arrest came out earlier in the testimony of Petitioner's co-defendant Joshua Jeter. (Dkt. No. 31 at 13). Petitioner argues that while Jeter testified that Lyles was "picked up," it was Petitioner that testified the arrest was related to an assault charge. (Dkt. No. 31 at 13). Seizing on this one statement in the R&R misses the point. Petitioner has not raised a ground of ineffective assistance of counsel for eliciting this testimony from Petitioner on direct examination and the wisdom of counsel doing so is not before the Court. What is before this Court is Petitioner's argument that eliciting this testimony calls into question trial counsel's credibility. For the reasons stated above, the Court finds that it does not.

was dishonest in testifying that he did not want Mr. Lyles criminal activities before the jury. Furthermore, "for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear." *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008). The PCR court found trial counsel's explanation reasonable and, to do so, had to find it credible. The Court finds no "stark and clear" error in that finding.

Petitioner next argues that even if trial counsel's concerns were reasonable, "those reasons evaporated when testimony came out during the trial exposing the jury to information concerning [Lyles] arrest and troubled past." (Dkt. No. 31 at 17). Thus, Petitioner argues that trial counsel should have "adjusted his strategy" and presented the brother's testimony. (*Id.*). Again, the Court finds reasonable the PCR court's determination that trial counsel's explanation was reasonable, even under this argument. Having Petitioner mention the arrest in passing in the middle of a narrative about the night is not the same is having the prosecution belabor the point in a cross-examination of Mr. Lyles. Trial counsel's strategy to avoid additional details and emphasis on the criminal activities of Petitioner's brother was within the bounds of *Strickland*. "*Strickland* does not guarantee perfect representation, only a 'reasonably competent attorney.'" *Harrington v. Richter*, 562 U.S. 86, 110 (2011).

The Court also agrees with the Magistrate Judge that the PCR court did not unreasonably apply *Strickland* with regard to the prejudice prong. The PCR court found that even if trial counsel had attempted to have Mr. Lyles testify, the trial court likely would not have allowed the testimony. (Dkt. No. 10-14 at 491). The trial court excluded testimony that "went to establishing (1) drugs were previously sold from the apartment where the incident occurred and (2) drugs were present in the apartment at the time of the incident." (Dkt. No. 10-3 at 3). Both

Petitioner's counsel and Jeter's counsel moved to allow such testimony to corroborate the defendants' testimony that drugs were sold at the apartment and that this was the reason that they went to the apartment on the night in question. (Dkt. No. 10-13 at 411-14). The trial court excluded the evidence as irrelevant and under South Carolina Rule of Evidence 403. (*Id.*). On direct appeal, the South Carolina Court of Appeals upheld the evidentiary ruling. (Dkt. No. 10-3). The trial court and South Carolina Court of Appeals did not find such information relevant under Petitioner's corroboration theory.

Petitioner's brother could only offer testimony that he could recall one time previously that he and his brother had been to Spicer's apartment to purchase marijuana. (Dkt. No. 10-14 at 457-58). The PCR court found that the trial court would likely have excluded such testimony, as it did other evidence that showing drugs were sold from the apartment. This determination is not unreasonable. Petitioner argues that the testimony of Leonard Lyles was "materially different" from the excluded evidence because it showed that Petitioner "had personally purchased marijuana from Spicer on at least one previous occasion." (Dkt. No. 31 at 15, 16). While not exactly the same as the excluded evidence, it is very similar, and the Court cannot find the PCR court's determination unreasonable. Furthermore, even had the testimony be allowed, the Court finds there is no reasonable probability that the result of the proceeding would have been different.

Mr. Lyles could not testify that Petitioner visited Spicer's apartment to buy marijuana regularly or even more than once. Testimony that Petitioner had been to Spicer's apartment one time to purchase marijuana shows that Petitioner was aware Spicer likely had cash from selling marijuana and could explain why Petitioner and Mr. Jeter may have picked this particular

-9-

apartment to rob. The Court also notes that the jury did not believe each co-defendant's corroborating testimony that the two were there only to buy drugs. Having Petitioner's brother testify likely would have brought out details regarding his own criminal actions on the night in question, called into question the credibility of Petitioner's brother, introduced additional "bad family" evidence that Petitioner is concerned about in a separate ground for relief, and simply provided motive for robbing this particular apartment. There was also evidence at trial that Petitioner and his co-defendant wore a mask and hood to the apartment on the night in question, which suggests a purpose of robbery. Given the totality of the evidence adduced at trial, the limited testimony that Petitioner's brother could offer, and the additional information regarding (and emphasis on) Petitioner's criminal actions that would likely be brought into evidence if Petitioner's brother had testified, the Court finds no reasonable probability that the result of the trial would have been different had Petitioner testified.

Therefore, for each of the reasons explained above, the Court grants summary judgment on this ground.

### D. Ground Three

In Ground Three, Petitioner alleges that trial counsel was ineffective for failing to object to an accomplice liability charge and by failing to request a clarifying instruction that attempting to purchase 28 grams or less of marijuana was not a felony. The Court takes each issue in turn.

Petitioner objects to the following portion of the trial court's accomplice liability instruction:

> Now, the common purpose may not have been to kill anyone at all, but if, during the commission of a felony such as burglary in the first degree or armed robbery, a homicide is committed by one of the participants which is a natural or probable

> consequence of the acts done in furtherance of the common plan, then each person who is present aiding, abetting, assisting or participating in the common plan is equally guilty of any homicide accomplished thereby and which is a natural and probable consequence of those criminal acts.

(Dkt. No. 1-1 at 11-12). Petitioner argues that this instruction effectively shifted the burden for demonstrating malice from the Government to Petitioner. (*Id.* at 12). The PCR court addressed this issue and found that the trial court's charge did not improperly shift the burden to Petitioner, and thus, found Petitioner was not ineffective under *Strickland*. (Dkt. No. 10-14 at 483-84). The Court finds the PCR court's determination reasonable.

Before instructing the jury on accomplice liability, the trial court first instructed the jury on the crime of murder. The trial court instructed the jury that murder was causing the death of another with malice aforethought: "it would be necessary that the evidence in this case has established to your satisfaction beyond a reasonable doubt that a defendant or an accomplice did commit some act or acts which proximately caused the death of Tavaris Howze and that the killing was done by a defendant with malice aforethought." (Dkt. No. 10-14 at 210). The trial court clearly distinguished the first element (proximately causing the death of another, which can be proved by accomplice liability) and the second element (malice aforethought, which must be possessed by the defendant).

The trial court then spent a considerable amount of time explaining malice. (*Id.* at 210-14). The trial court repeatedly used permissive language in stating that the jury was allowed to infer malice from circumstantial evidence, and specifically used such language when instructing that "you are permitted to infer the existence of malice from proof of the initial commission of criminal acts resulting in the death of another person during the commission of a felony which is

-11-

dangerous to human life, or where the circumstances of the crime create a substantial foreseeable risk to human life." (*Id.* at 212). The trial court instructed the jury that while it was permitted to infer the existence of malice based on circumstantial evidence, "you are in no way required to make that inference . . ." (*Id.* at 213). The trial court also instructed that "[t]he state is required to prove malice just as it must prove any other essential element of the crime beyond a reasonable doubt." (*Id.*). The trial court again stated that "the state must prove beyond a reasonable doubt that a killing did occur and that it was accompanied by malice aforethought in order to establish the crime of murder." (*Id.* at 214).

Only after all of these instructions, did the trial court instruct the jury on accomplice liability. In this context, the trial court charged that "each person who is present aiding, abetting, assisting or participating in the common plan is equally guilty of any homicide accomplished thereby and which is a natural and probable consequence of those criminal acts." (*Id.* at 217). The trial court did not charge that an accomplice is equally guilty of ***murder***, but of ***homicide***, i.e., causing the death of another. This instruction does not presume malice, which an entirely separate element of murder.[3]

---

[3] The trial court uses the term homicide correctly throughout its instructions and the use distinguishes it from murder, which the trial court repeatedly emphasized required malice. (*See, e.g.*, Dkt. No. 10-14 at 216 ("Under the legal theory of accomplice liability two or more persons may be found guilty of an unlawful homicide even though only one person actually commits the act which directly responsible for the death of another.")). In closing arguments, Government counsel also used the term homicide as distinct from murder. (*See id.* at 136 (explaining that malice can be inferred with "an intentional homicide with an intent to kill"); 137 ("In South Carolina homicide is broken down into three categories–justifiable, excusable and criminal.")).

The PCR court distinguished the South Carolina Supreme Court's decision in *Lowry v. State*, which found the trial court's instruction did shift the burden of proof on malice. (Dkt. No. 10-14 at 472-73). In *Lowry*, the South Carolina Supreme Court found:

> Viewed in its entirety, the supplemental jury charge contained no permissive language indicating that the jury may infer malice from Petitioner's participation in the armed robbery. Instead, the charge simply provided that if the jury first determined that a killing occurred in the course of the armed robbery, it must find Petitioner guilty of murder.

376 S.C. 499 (2008). The PCR court noted that the charge at issue here ***did*** contain the permissive language lacking in *Lowry*. Again, the Court finds this determination by the PCR court reasonable.

Next, Petitioner argues that defense counsel should have requested an instruction clarifying that possessing or attempting to possess a small amount of marijuana is not felony. Petitioner testified that he was at Spicer's apartment on December 4, 2008, to purchase $10 worth of marijuana. Petitioner argues that if the jury believed him but thought purchasing a small amount of marijuana was a felony, they might erroneously convict him of murder under the trial court's accomplice liability instruction.

The PCR court addressed this argument and found no prejudice. It noted that if the jury had accepted Petitioner's version of events, he would not have been convicted of attempted burglary, attempted armed robbery, or of murder. (Dkt. No. 10-14 at 484). The Court finds this determination reasonable, and the PCR court's application of *Strickland* reasonable. Therefore, the Court adopts the R&R and grants summary judgment on this ground.

-13-

## IV. Conclusion

For the reasons stated above, the Court **ADOPTS** all portions of the R & R (Dkt. No. 23), except for the discussion under the heading "Statute of Limitations" on pages 9-11, **GRANTS** Respondent's Motion for Summary Judgment (Dkt. No. 11), and **DISMISSES** the habeas petition with prejudice.

## Certificate of Appealability

The governing law provides that:

> (c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies the standard by demonstrating that reasonable jurists would find this Court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **DENIED**.

**IT IS SO ORDERED.**

Richard Mark Gergel
United States District Judge

September 14, 2014
Charleston, South Carolina